**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**
**v.**
**JOHNNIE R. KIDD, III, Appellant**

D.C. CRIM. APP. NO. 1997/043

District Court of the Virgin Islands

Division of St. Croix

November 23, 1999

Eszart A. Wynter, Sr., Esq., St. Croix, U.S.V.I., *for Appellant*

Maureen Phelan Cormier, Esq., *Virgin Islands Dept. of Justice*, St. Thomas, U.S.V.I., *for Appellee*

FINCH, *Chief Judge*, MOORE and VERNE A. HODGE,[1] Sitting by Designation

## OPINION OF THE COURT

PER CURIAM

This panel is called upon to determine: 1) whether appellant's removal from the courtroom during the reading of the verdict and the polling of the jury is reversible error; 2) whether the trial judge erred in denying appellant's motion to suppress his statements to police officers after he had been given his Miranda warnings; and 3) whether the trial judge erred in failing to suppress certain pieces of evidence seized from appellant's apartment. For the reasons stated below, we will affirm appellant's conviction and sentence.

## FACTS

On the morning of November 29, 1995, the body of Mrs. Barbara Cromwell ["Mrs. Cromwell"] was discovered in her apartment at the Cruzan Princesse Condominiums ["Cruzan Princesse"] on St. Croix. Mrs. Cromwell had been brutally murdered and left on her bed in a pool of blood with a pillow over her face. The investigation revealed that layers of tape had been placed over her entire face; her arms and legs were tied spread-eagled to both the headboard and footboard; and she had been gagged with a washcloth in her mouth. (Appendix of the Government ["App. of

---

[1] The Honorable Verne A. Hodge retired as Presiding Judge of the Territorial Court on November 6, 1999.

Gov't"] at 177.)[2] An autopsy performed by Dr. Francisco Landron ["Dr. Landron"], Chief of Pathology at the Roy L. Schneider Hospital further revealed that Mrs. Cromwell had sustained twelve stab wounds, five incise wounds, multiple abrasions due to blunt force, contusions to the right eye, nose, scalp, breasts, abdomen, pelvic region, legs and thighs. Dr. Landron testified that Mrs. Cromwell was alive when these wounds were inflicted, and that her death was ultimately caused by "massive bleeding or hemorrhage shock due to the multiple wounds and due to the incise wounds of the neck." (Id. at 242, 248-49.)

On the same day Mrs. Cromwell's body was discovered, Corporal Luis Manuel Pereira ["Cpl. Pereira"] received information from a concerned citizen who wished to remain anonymous, stating that she had observed two black males exiting a gray car, carrying a TV and something else in a box, and discussing —while transporting the box into Apartment 55, Building 11, Princesse Project —the fact that they had killed a woman. Cpl. Pereira understood the names provided by the informant via telephone to be Danny and Nick.

Police investigators also obtained information from John Reichert ["Reichert"], a friend of Mrs. Cromwell who discovered her body, and who also owned a condominium unit at Cruzan Princesse. Reichert indicated that on three separate occasions on Monday, November 27th a young black male had been found trespassing on the Cruzan Princesse property and was asked to leave because extensive hurricane damage had rendered the property unsafe. On one of these three occasions that same young man, later identified as appellant, returned to the property accompanied by two other individuals.[3]

---

[2] Attorneys are reminded that the Virgin Islands Rules of Appellate Procedure require that they

consult and agree on the contents of the appendix. It is the duty of the parties in the first instance to cooperate in filing one joint appendix on appeal. The Appellate Division may permit, upon timely motion, the filing of separate appendices upon certification, with supporting documents, that a given party is not cooperating.

V.I. R. APP. P. 24(b).

[3] On May 24, 1996, Reichert selected appellant from a photo lineup as one of the individuals he had seen on the property on November 27th.

Appellant was arrested for the murder of Mrs. Cromwell on December 4, 1995 at around 10:40 p.m. and advised of his rights.[4] While en route from the police station to the Anna's Hope Detention Center, one of the officers initiated a conversation with appellant about his family. Appellant allegedly started to cry and exclaimed, "I'll tell you the truth. I did it. I was the one. I cut her." (Appendix of the Appellant ["App."] at 23, 101.)

In a five count information, appellant was charged with three counts of murder in the first degree in violation of V.I. CODE ANN. tit. 14, § 922(a)(1), one count of kidnapping in violation of 14 V.I.C. § 1051, and one count of burglary in violation of 14 V.I.C. § 442(4).[5] Appellant was convicted on all counts. After the jury foreperson had read the guilty verdict on the second count, appellant stood up and started yelling obscenities. The marshals immediately restrained appellant and wrestled him out of the courtroom into his holding cell. Defense counsel, Jeffrey B.C. Moorhead, Esq., followed the marshals and his client out of the courtroom, but was soon summoned to return. The remaining counts on the verdict were read during defendant's absence from

---

[4] Johnnie Kidd, III and Nicholas Albert were arrested and tried separately for the murder of Mrs. Cromwell.

[5] Murder First Degree:

(a) All murder which —

(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or . . . .

(14 V.I.C. § 922(a)(1)). Kidnapping is defined in relevant part as:

Whoever without lawful authority confines or imprisons another person within this Territory against his will, or confines or inveigles or kidnaps another person, with intent to cause him to be confined or imprisoned in this territory against his will . . . is guilty of kidnapping and shall be imprisoned for not less than one and not more than 20 years.

14 V.I.C. § 1051. Burglary is defined as:

Whoever, with intent to commit an offense therein, breaks and enters the dwelling house, building, or structure of another, in which there is at the time a human being —
(4) while engaged in effecting such entrance, or in committing any offense therein, or in escaping therefrom, assaults any person — is guilty of burglary in the first degree and shall be imprisoned not less than 10 years nor more than 20 years, provided that if in the commission of said crime a dangerous weapon of any kind is used, then the penalty shall be not less than 30 years. . . .

the courtroom, but in his counsel's presence. The jury was then polled at defense counsel's request.

After trial, defense counsel filed a Notice of Record in the trial court objecting to the fact that his client had been removed from the courtroom after his outburst, and stating that "at no time was the Defendant ever warned by the Court that his conduct would result in his removal from the courtroom." Appellant then filed an Amended Motion for a New Trial/Judgment of Acquittal arguing that his Fifth Amendment due process right to be present at trial was violated by his forcible removal from the courtroom during the reading of the verdict. The Government of the Virgin Islands ["government"] responded in opposition thereto. The trial judge denied appellant's motion, finding that there was "no showing that the defendant's absence would somehow have frustrated the fairness of the proceeding." (App. of Gov't at 291.)

On October 8, 1997, appellant was sentenced to life without parole for murder first degree; twenty years for kidnapping; and thirty years for burglary in the first degree, all to run consecutively. (App., Appendix II.)[6] This timely appeal followed.

## DISCUSSION

### A. Jurisdiction And Standards Of Review

This Court has appellate jurisdiction to review judgments and orders of the Territorial Court in all criminal cases in which the defendant has been convicted, other than a plea of guilty. 4 V.I.C. § 33; Section 23A of the Revised Organic Act of 1954.[7] Findings of fact are subject to a clearly erroneous standard of review, and we exercise plenary review over questions of law. 4 V.I.C. § 33; *see Rivera v. Government of the Virgin Islands*, 37 V.I. 68, 73, 981 F. Supp. 893 (D.V.I. App. 1997).

■■ A defendant's failure to object to his removal from the courtroom is reviewed for plain error. *Government of the Virgin*

---

[6] Counsel for appellant is reminded that the pages of the appendix must be clearly and sequentially numbered pursuant to V.I. R. App. P. 24(c).

[7] Revised Organic Act of 1954, § 23A, 48 U.S.C. § 1614, reprinted in V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995)(preceding V.I. Code Ann. tit. 1).

*Islands v. Knight*, 28 V.I. 249, 989 F.2d 619, 631 (3d Cir.), *cert. denied*, 510 U.S. 994, 126 L. Ed. 2d 457, 114 S. Ct. 556 (1993). Violations of the right to be present during all critical stages of the proceedings are subject to harmless error analysis. *Rushen v. Spain*, 464 U.S. 114, 117 n.2, 78 L. Ed. 2d 267, 104 S. Ct. 453 (1983); *Rogers v. United States*, 422 U.S. 35, 40, 45 L. Ed. 2d 1, 95 S. Ct. 2091 (1975); *United States v. Alessandrello*, 637 F.2d 131, 141 (3d Cir. 1980). The denial of a motion for a new trial is reviewed for abuse of discretion. *Colbourne v. Government of the Virgin Islands*, Crim. No. 95-214, 1995 U.S. Dist. LEXIS 21392 at n.3 (D.V.I. App. Div. Jan. 10, 1995); *Maduro v. P. & M. Nat'l, Inc.*, 31 V.I. 121, 125 (D.V.I. App. Div. 1994).

While the trial court's findings of fact are reviewed for clear error, the ultimate determination of whether there was a custodial interrogation is a question of law over which we exercise plenary review. *See Government v. Christopher*, 990 F. Supp. 391, 38 V.I. 193, 196 (D.V.I. App. Div. 1997); *United States v. Harris*, 44 F.3d 1206 (3d Cir. 1995) (citing *Miller v. Fenton*, 474 U.S. 104, 115-17, 88 L. Ed. 2d 405, 106 S. Ct. 445 (1985)). Likewise, the partial denial of the motion to suppress is reviewed for clear error as to the underlying facts, but its legality in light of the court's properly found facts is subject to plenary review. *See United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998) (citations omitted); *United States v. Deaner*, 1 F.3d 192, 196 (3d Cir. 1993) (citation omitted).

## B. Whether Removal From the Courtroom During the Reading of the Verdict and Polling of the Jury is Reversible Error.

After the foreperson delivered the guilty verdict on Count II of the Information, appellant stood up and yelled:

> THE DEFENDANT: Them mother scunt lie, and you all know they lie. Me ain't want to hear that fuck. If you put two sticky part of the tape together, when you take the sticky part off the print ain't gon be deh. They know they lie. They know they fucking lie to frame me. They know I was innocent. Them man know they lie.

> (Thereupon, the defendant was removed from the courtroom and accompanied by his attorney.)

(App., Tr. of June 13, 1997 at 4-6.)

Appellant's argument before this Court is twofold. First, he contends that his due process right to be present during trial was violated when he was forcibly removed from the courtroom for no legitimate reason, and without prior warning; and second, that whatever was said in the courtroom after his removal, and before his counsel was summoned to return, was ex parte communication between the court and jurors. The resultant harm, he contends, was a violation of his right to self-representation. (Br. of Appellant at 16-18.) He specifically alleges that if he was in the courtroom while the remainder of the verdicts were being read, he may have elected to represent himself in the polling of the jury. (App. of Gov't at 263-66.) We note that appellant at no time indicated that he wished to exercise this right.

The government, on the other hand, contends that appellant's failure to timely object to his removal divests this Court of jurisdiction to review that issue. The government further contends that appellant did not have a right to be present at every stage of the proceedings; that his removal during the reading of the verdict and polling of the jury did not frustrate the fairness of the proceedings; and finally, that the few words uttered during appellant's absence were "completely neutral and innocuous." (Brief of Appellee ["Br. of Appellee"] at 21.)

### Failure to Contemporaneously Object to Removal

This Court must first determine whether appellant preserved the issue of his removal for appeal. Although counsel contended that appellant was removed for "no legitimate reason," he stated:

> Let us look at the situation. What was going on on that afternoon was [a] very, very, very, very unusual chain of events. . . . It was the most strangest turn of events I have ever been in, inside or outside of a courtroom. . . . I was in shock. I think everyone in the courtroom was in shock.

(App. of Gov't at 275-76.) It is because of this shock that counsel contends he did not have an opportunity to make a contemporaneous objection to his client's removal.

A criminal defendant's right to be present at trial is grounded in the constitutional right to confront witnesses. U.S. CONST. amend.

VI. The Fifth Amendment to the United States Constitution also provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. CONST. amdnd. V.[8] Additionally, the Rules of the Territorial Court provide in relevant part that:

> The defendant shall be present at every stage of the trial and at the imposition of sentence. . . . The defendant's presence is not required at a reduction of sentence.

TERR. CT. R. 124. The Federal Rules of Civil Procedure, which apply to proceedings in the Territorial Court to the extent they are not inconsistent with the Rules of the Territorial Court, further provide that:

> **(b) Continued Presence Not Required.** The further progress of the trial to and including the return of the verdict . . . will not be prevented and the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial . . .
>
> . . . .
>
> (3) *after being warned by the court* that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

FED. R. CRIM. P. 43 (emphasis added); *see also* TERR. CT. R. 7. Although the federal rules require warning prior to removal, the trial judge had no duty to warn pursuant to territorial Rule 124.

Due process does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow." *Snyder v. Massachusetts*, 291 U.S. 97, 106-07, 78 L. Ed. 674, 54 S. Ct. 330 (Cardozo, J.) (1934). Moreover, the contemporaneous objection rule, that the failure contemporaneously to assert a right constitutes a waiver of that right, applies to a criminal defendant's right

---

[8] The due process clause of the Fifth Amendment of the United States Constitution is made applicable to the Virgin Islands pursuant to Revised Organic Act of 1954, § 3, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88 (1995) (preceding V.I. CODE ANN. tit. 1).

to be present under Terr. Ct. R. 124. *Cf. United States v. Bertoli*, 40 F.3d 1384, 1398-99 (3d Cir. 1994).[9]

▪ The trial judge noted that contemporaneous does not mean immediate; it means counsel should make the objection at the most opportune time, and found that counsel had failed to do so. Having so noted, the judge denied the motion for a new trial finding

> that the defendant, through his counsel's failure, failure to insist, or even to merely request his presence at the verdict stage reading, and at the polling, constituted a waiver of that right under Rule 43. And to the extent that it wasn't waived, the Court now having a record before it as to what occurred, the Court would find the error harmless.

(App. of Gov't at 292.) The trial judge also found that while the right to be present at all stages of trial is guaranteed, the Constitution has been construed as only guaranteeing the right to be present at all stages of the trial where defendant's absence might frustrate the fairness of the proceedings.[10] The trial judge's ruling that failure to contemporaneously object resulted in a waiver of that right is reviewed for plain error. Although we find no plain error in the trial judge's ruling that appellant failed to preserve the removal issue for appeal, we may now determine the effect of

---

[9] *See also United States v. Gagnon*, 470 U.S. 522, 529, 84 L. Ed. 2d 486, 105 S. Ct. 1482 (1985) (holding that the contemporaneous objection rule applies to a criminal defendant's right to be present under Rule 43); *accord United States v. Brown*, 923 F.2d 109, 112 (8th Cir. 1991) (holding that failure to assert right under Rule 43 constitutes waiver); *United States v. Doe*, 964 F.2d 157, 159 (2d Cir.) ("[W]aiver by counsel of a defendant's right to be present during the proceedings is valid when made in the presence of the defendant"), *cert. denied*, 506 U.S. 1009, 121 L. Ed. 2d 560, 113 S. Ct. 628 (1992); *cf. Government of Virgin Islands v. Williams*, 892 F.2d 305, 309 (3d Cir.1989) (holding, under the contemporaneous objection rule, that a party must object contemporaneously "to any matter believed to be erroneous, at peril of relinquishing the opportunity to challenge that matter on appeal"), *cert. denied*, 495 U.S. 949, 109 L. Ed. 2d 537, 110 S. Ct. 2211 (1990).

[10] *Compare Faretta v. California*, 422 U.S. 806, 819 n.15, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975) (holding that the right to be present granted by Fed. R. Crim. P. 43(a) is broader than that granted by the Constitution, which is only the "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings . . . .").

removal on appellant's right to be present at all stages of the proceedings.

## Removal Constituted Harmless Error

■ A violation of a defendant's right to be present at all stages of trial may constitute harmless error if a reviewing court determines beyond a reasonable doubt that the error did not influence the verdict. *See Rushen,* 464 U.S. at 117-119 & n.2; *Alessandrello,* 637 F.2d at 139. In *Snyder v. Massachusetts,* 291 U.S. 97, 78 L. Ed. 674, 54 S. Ct. 330 (1934), the Supreme Court held that the Confrontation Clause of the Sixth Amendment gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence. The Supreme Court has also held that

> "[t]his right to 'presence' was based upon the premise that the 'defense may be made easier if the accused is permitted to be present at the examination of jurors or the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself."

*Faretta,* 422 U.S. at 816 (quoting *Snyder,* 291 U.S. at 106).

■ In denying appellant's motion for a new trial, the trial judge found that appellant had failed to show how "fundamental fairness" might have been thwarted by appellant's brief absence at that stage of the proceeding. The trial judge further found that there was no longer any threat of prejudice to the defendant at that stage because the jury had completed deliberations and were in the process of returning their verdict when appellant interrupted. We agree that although appellant has a right to be present during the return of the verdict, that right is not absolute. The failure to contemporaneously object to his removal constituted a waiver, but appellant's removal at that stage of the trial constituted harmless error. As such, the trial court did not abuse its discretion in denying appellant's motion for new trial. *See* TERR. CT. R. 135.

162

■ Once appellant was removed from the courtroom, the jury foreperson continued with the reading of the verdict. The trial transcript indicates that the trial judge was not aware that counsel for appellant had accompanied his client from the courtroom, and the following discussion took place:

THE COURT: Mr. Foreperson, you may proceed.

THE FOREPERSON: With respect to the crime charged in Count III, of the information, 1st Degree Murder, we do find the defendant guilty. Count IV: With respect to the crime charged in Count IV, of the information, Kidnap, we, the defendant — we find the defendant guilty. Count V: With respect to the crime charged in Count V, of the information, 1st Degree Burglary, we do find the defendant guilty. Day 13th, June 1997, Kingshill of the Virgin Islands.

THE COURT: Marshal, one second.

(Thereupon, Attorney Moorhead was summoned to return[] to the courtroom and so returned.)

THE COURT: Mr. Foreperson, I didn't realize that Attorney Moorhead was not in the courtroom at the time; so I would ask if you please reread where you left off when he left, which I believe was Count No. III.

. . . .

THE COURT: Thank you, Mr. Foreperson. Is there any request from either of the parties?

MR. MOORHEAD: Yes, your Honor. First of all I apologize for the outburst. Just because of the outburst, I would ask to have the jury polled.

THE COURT: Very well. Would the clerk poll the jury, please.

(App., Tr. of June 13, 1997 at 4-6.) Just as "an error concerning the defendant's presence at all stages of the trial is harmless if it can be

163

said that there was no reasonable possibility of prejudice from the error," that too is the "standard most courts have applied on the consequences of communications between court and jury." 3A CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 724 (2d ed. 1982). The general rule is:

> If the communication is part of the record, and its substance is proper, then it can be said affirmatively that the error was harmless. But if it is impossible to be sure exactly what was said to the jury, either because the message was delivered orally through a third person or for some other reason the communication is not a part of the record, reversal must follow. There must be reversal, also, if the content of the communication is known but it cannot be told whether this influenced the jury.

*Id.* We find no prejudice to appellant resulting from this communication, and no reversible error.

## C. Whether the Trial Judge Erred in Denying Appellant's Motion to Suppress Statement to Police.

Appellant was arrested on December 4, 1995 and given his Miranda warnings.[11] Appellant not only signed a form indicating that he understood his rights, but also signed a waiver of those rights. Appellant then started to give a statement, but changed his mind — thereby invoking his right to remain silent. The officer discontinued questioning at that point.

While being transported to the Anna's Hope detention Center shortly after 12:00 a.m. on December 5, 1995, Sergeant Ishmael Ramirez ["Sgt. Ramirez"] initiated a conversation with appellant. On direct examination by the government, Sgt. Ramirez explained the nature of the conversation as follows:

A   We started to talk about Mr. Kidd's family.
Q   When you say "we", who is we?
A   Well, I start the conversation with the family and he was answering the question.
Q   So, tell us about this conversation.

---

[11] *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

A    Well, I told him I know his aunt and his father. I went to school with his aunt. And then certain things, he started to cry.

Q    And then what happened?

A    He asked a question.

Q    What did he ask?

A    He asked how many time he will get for the crime.

Q    And who responded to him?

A    Corporal Pereira.

Q    Do you recall what he said?

A    He — Pereira told him he need to tell the truth to his attorney. That he need to talk to his attorney.

Q    Did the defendant make a response to that?

A    Yes, sir.

Q    What was that response?

A    He said that he did it. That he cut — he cut her.

(App., June 11, 1997 Transcript at 23.)

Appellant, on the other hand, contends that he was taunted by the officers about the fact that his father and his aunt are both imprisoned on felony convictions, and about what would happen to him in prison. Appellant's motion to suppress the alleged statements raised the following issues: 1) whether the defendant was interrogated during his trip to Anna's Hope; and 2) if he was interrogated, whether he was advised of his rights, and validly waived those rights.

Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody . . . ." *Christopher*, 38 V.I. at 197 (quoting *Miranda*, 384 U.S. at 444). "Interrogation," as conceptualized in the *Miranda* opinion, "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). *Miranda* seeks to deter situations where a police-dominated atmosphere generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467. The term "interrogation" under *Miranda*:

"refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Innis*, 446 U.S. at 301.

■ Assuming arguendo that appellant's version of the conversation is true, there is no evidence that he was subject to an "interrogation." Appellant had been given his *Miranda* warnings no more than two hours before his conversation with the officers. Although there was some discussion about appellant's family, the court found, in looking at the totality of the circumstances, that the testimony of the officers was more credible than that of appellant, and that there was no reason the officers should have known that this conversation was reasonably likely to elicit an incriminating response. *See id.* at 301-02 ("Since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."). Moreover, the record before this Court indicates that appellant initiated the inquiry about how much time he could get if convicted, and was again reminded by Cpl. Pereira that he should speak to his attorney while in the patrol car. It was after that reminder that appellant made the incriminating statements. The *Miranda* Court noted that:

Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth

Amendment and their admissibility is not affected by our holding today.

*Miranda*, 384 U.S. at 478. Our review of the record has found no evidence which would indicate that the trial judge's factual findings were clearly erroneous and that his legal conclusion that there was no interrogation is reversible. For the reasons stated, we find that the trial court properly denied appellant's motion to suppress.

## D. Whether the Trial Judge Erred in Failing to Suppress Evidence Seized From Appellant's Apartment.

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *also* FED. R. CRIM. P. 41. In *United States v. Harvey*, the Court of Appeals for the Third Circuit reiterated the current requirements for the issuance of a search warrant and the standard of review to be applied:

> [t]he task of the issuing [judge] is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the [judge] had a "substantial basis for . . . concluding" that probable cause existed.

2 F.3d 1318, 1321-22 (3d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)).

A search warrant, based upon probable cause found in sworn statements presented by Cpl. Pereira, was executed on November 29, 1995 authorizing law enforcement personnel to seize the following property from Building 11, Apartment 55, Nicasio Apartments:

A.   A 19" Samsung TV.

167

B.  A Sharp brand camcorder.
C.  Any VCR.
D.  Any car keys to any Toyota car.
E.  Any car keys identified with the markings "8175."
F.  Any knife with the brand name "Tri Star."
G.  Any knife with the words "Imperial."
H.  Items reflecting the identity of those who live at Building 11, Apartment 55 such as identification cards, passports, correspondence bearing the name(s) of the occupant(s), and photographs.

(App. of Gov't at 28.) Officers seized a total of seventy-two categories of items from appellant's apartment.

On one hand, appellant alleges that only eight of the seventy-two items seized could have reasonably been related to the items indicated in the search warrant, and that the officers' "fishing expedition" was an unconstitutional violation of his Fourth Amendment constitutional rights. On the other hand, appellant alleges that the search warrant was "facially invalid," and that this general warrant allowed for an unrestricted, unconstitutional search of his apartment.

The government argues that only eighteen of the seventy-two items seized were not suppressed, and, of that eighteen, only seven were offered into evidence. As such, the government contends that this appellate review is limited to the seven seized items that were introduced into evidence.

Of the items seized, appellant conceded to the seizure of the following items pursuant to the warrant:

22.  Application for G. John, Jr.
24.  Samsung TV remote control
27.  Philco VHS VCR
30.  Samsung 19" color TV
47.  Wallet containing Johnnie Kidd's I.D.
53H.  Toyota car key with key ring no. 8175

Appellant objected to the seizure of all other items, arguing that they should have been suppressed because they were not specifically described in the warrant. The trial judge found that the majority of items in question were seized "based solely upon

police conscience, short of probable cause," but a few items would be admissible for their "evidentiary value":

31, 39, 67.   Soap found in QVC box with victim's name on it

40, 55, 56.   Clothing with apparent blood stains

48.   Bushnell binoculars

51.   Address stamper containing Barbara Cromwell's name and address

53C.   Gold watch with initials J.R.R.

53I, 53K.   Two sets of keys

63.   Nyquil

71.   Samsung microwave

Ultimately, of the admissible items, only seven were admitted into evidence. Three of these were conceded: 30 (Samsung TV); 47 (wallet); and 53H (Toyota keys). This Court need only consider whether the remaining four: 51 (address stamper); 53C (gold watch); and 53I & 53K (keys) were properly ruled admissible.[12] The government argues that the items in question were in "plain view", and, therefore, admissible.

■ We note, at the outset, that because the search warrant authorized the seizure of small, easily concealable objects such as keys, the officers were lawfully allowed to conduct a detailed search through every nook and cranny where such objects could be found, thereby alleviating the need for an extensive plain view analysis in this case. Here, the trial court found probable cause to search the apartment based upon affidavits from police detailing the nature of information received from friends of Mrs. Cromwell, an anonymous informant, and items officers believed to be missing from the apartment which lead to the signing of a valid search warrant. The fruits of that search were an address stamper with Mrs. Cromwell's stateside address; two sets of keys which had labeling similar to the victim's keys and consistent with the

---

[12] *Cf. Riddick,* 156 F.3d at 510 (holding that a defendant's failure to show that the government used any contested item seized against him at trial renders any error harmless); *United States v. Menon,* 24 F.3d 550, 559 n.11 (3d Cir. 1994) (holding that where the government seized four documents and only introduced three into evidence, the admissibility of the fourth document is not at issue on appeal).

numbering scheme of the condominium complex;[13] and a gold watch with the initials "J.R.R." belonging to Reichert. Therefore, the incriminating nature of this evidence was immediately apparent, and the officers had a lawful right to search where these four items were found.

## CONCLUSION

For the above-stated reasons, we find that appellant's removal from the courtroom constituted harmless error; that the trial judge properly denied appellant's motion to suppress; and that the trial judge did not err in refusing to suppress the four contested pieces of evidence.

## ORDER OF THE COURT

PER CURIAM

AND NOW this 23 day of November, 1999, having considered the arguments and submissions of the parties, and for the reasons set forth in the Court's accompanying opinion of even date, it is hereby

ORDERED AND ADJUDGED that the rulings of the Territorial Court are AFFIRMED.

---

[13] The officer who cataloged the crime scene concluded that they were keys to other condo units which Mrs. Cromwell possessed by virtue of her position as president of the Condominium Association. Also, Reichert, Mrs. Cromwell's neighbor who was helping to coordinate repairs to the condominium complex also testified that those two sets of keys were the spares to his condo and his daughter's condo.