

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-1998

# United States v. Riddick

Precedential or Non-Precedential:

Docket 97-1367,97-1433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"United States v. Riddick" (1998). *1998 Decisions.* Paper 235.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/235

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 25, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-1367 and 97-1433

UNITED STATES OF AMERICA,
        Appellant in No. 97-1433,

v.

HARRY LEE RIDDICK, JR.,
Harry Lee Riddick,
        Appellant in No. 97-1367.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No.: 94-cr-00159-1)

Argued July 20, 1998

Before: STAPLETON and ROSENN, Circuit Judges,
and RESTANI, Judge*

(Filed September 25, 1998)

        Glennis L. Clark, Esquire (argued)
        532 Walnut Street
        Allentown, Pennsylvania 18101
         Attorney for Appellant in
         No. 97-1367.

_____

* Honorable Jane A. Restani, Judge, United States Court of International
Trade, sitting by designation.

Michael R. Stiles, Esquire
United States Attorney
Robert E. Courtney, III, Esquire
Deputy United States Attorney
Walter S. Batty, Jr., Esquire
Assistant United States Attorney
Barbara L. Miller, Esquire (argued)
Assistant United States Attorney
615 Chestnut Street,
Suite 1250
Philadelphia, Pennsylvania 19106
Attorneys for Appellant in
No. 97-1433.

OPINION OF THE COURT

RESTANI, Judge.

Harry Lee Riddick, Jr. appeals his conviction following a jury trial. Riddick raises multiple claims including that there was a variance between the single conspiracy charged and the evidence produced at trial, there was insufficient evidence to support his continuing criminal enterprise ("CCE") conviction, the Government both improperly disclosed and presented misleading grand jury testimony, the court erred in denying Riddick's suppression motion, and the Government conducted an unauthorized wiretap. The court affirms the conviction.

The Government cross-appeals Riddick's sentence to a term of 33 years on the CCE count. The Government contends that the district court erred in assigning Riddick an offense level of 42 based on the United States Sentencing Commission, Guidelines Manual, S 2D1.5 (Nov. 1995) (hereinafter "USSG"), the guideline applicable to his CCE conviction, even though USSG S 2D1.2, the guideline applicable to his conviction for distribution of cocaine near a school, required a higher offense level of 43 and a mandatory life sentence. The court vacates the sentence and remands for resentencing.[1]

_____

1. Because a mandatory life sentence is required on the school count, the court does not reach the issue of whether the district court erred in refusing to sentence Riddick to the statutorily mandated term of life in prison for his CCE conviction as required by 21 U.S.C. S 848(b).

Factual Background

This case began with an indictment against twenty three
defendants who engaged in a drug distribution conspiracy
in Pennsylvania from 1989 to 1994. The Government filed
a superseding indictment in July 1994 against the original
defendant and co-defendants, including Riddick. The
indictment charged Riddick with one count of engaging in
a continuing criminal enterprise (21 U.S.C. S 848(a)), one
count of conspiring to distribute more than five kilograms
of cocaine (21 U.S.C. S 846), thirteen counts of distributing
cocaine in or near a school (21 U.S.C. S 860(a)), and one
count of distribution of cocaine (21 U.S.C. S 841(a)(1)).

On February 6, 1996, a jury convicted Riddick on all
counts.[2] Following a sentencing hearing, the court found
Riddick's CCE involved in excess of 150 kilograms of
cocaine. The court based this finding on the Government's
calculation that Riddick was responsible for in excess of
350 kilograms, the probation officer's calculation which was
in excess of 250 kilograms, and the court's own detailed
assessment of the trial evidence, including evidence of the
length of time of the conspiracy, the suppliers, the sellers,
and the amount of cocaine distributed each week.

The Government argued that Riddick should be
sentenced under the Sentencing Guideline section resulting
in the highest offense level within the group of counts. The
Government reasoned that here, the conviction for
distribution of cocaine near a school, rather than the
conviction for operating a CCE, provided the higher offense
level and life imprisonment. Moreover, the Government
argued that the court was not precluded from sentencing
Riddick on the distribution near a school counts because
that offense is not a lesser included offense of the CCE
count. The district court rejected this argument and held
that "if you charge . . . continuing criminal enterprise, . . .
that offense is so odious and so severe that if the
Government secures a conviction on that offense, then the
sentence should be imposed on that offense, even if it [is]
not technically a lesser included offense."

_____

2. Any facts relevant to Riddick's appeal of his conviction are discussed
in Section I.

3

Thus, the court imposed a sentence of 33 years on the CCE count. The district court did not dismiss the remaining counts and did not sentence Riddick on them. This appeal followed.

Jurisdiction

The district court exercised jurisdiction pursuant to 18 U.S.C. S 3231 (1994) because the case involved offenses against the laws of the United States. This court has jurisdiction of appeals from all final decisions of the district court pursuant to 28 U.S.C. S 1291 (1994). In addition, this court has jurisdiction over an appeal by the Government for review of a final sentence pursuant to 18 U.S.C. S 3742(b) (1994).

Discussion

I.

A. Variance

Riddick claims that there was a prejudicial variance between the indictment and the trial evidence because he and co-defendant Shannon Riley were charged as members of a single conspiracy, but the trial evidence showed that they were members of separate conspiracies. It is undisputed that the indictment charged that Riddick, and all of his co-defendants including Shannon Riley, were part of a single conspiracy to distribute more than five kilograms of cocaine using Phill's Bar and Grill, Allentown, as a headquarters and safe haven for drug dealing. Thus, the only remaining question is whether the jury properly found the existence of a single conspiracy. The existence of a single conspiracy is a finding of fact that must be sustained if, when viewed in the light most favorable to the government, there is substantial evidence to support that finding. United States v. Smith, 789 F.2d 196, 200 (3d Cir. 1986).

The court finds that the Government presented substantial evidence supporting the jury's finding of a single conspiracy. The trial evidence showed that Riddick

4

and Riley closely cooperated and consulted each other to protect Riddick's ongoing cocaine operation. They supplied each other with information about law enforcement investigations. Riley used the "safe haven" that Riddick created at Phill's Bar and Grill to sell cocaine, which she was permitted to do only because she was associated with Riddick. Thus, there was no variance between the indictment and the evidence, both of which show a highly interdependent group of sellers who shared a unity of purpose and who were led by Riddick.

B. CCE Conviction

Riddick claims that there was insufficient evidence to support his conviction for operating a continuing criminal enterprise because the Government's evidence showed that Riddick supervised only two "runners," notfive or more persons as required by 21 U.S.C. S 848(c). 3 The court reviews the sufficiency of the evidence in the light most favorable to the government and must credit all available inferences in favor of the government. United States v. Dickens, 695 F.2d 765, 779 (3d Cir. 1983).

The court finds that the Government presented sufficient evidence to support Riddick's conviction for operating a CCE. The trial testimony shows that Riddick controlled more than five couriers and sellers. Riddick hired sellers, set daily guaranteed wages for sellers, set cocaine prices, provided pagers, and numerical identifier codes to his sellers, posted bail for arrested sellers, and obtained confidential police information to protect sellers. Riddick stationed certain sellers at Phill's Bar & Grill, where they had the right to sell cocaine. Other sellers sold door to door. Therefore, the testimony showed that Riddick had supervised numerous sellers in a unified drug ring.

_____

3. Riddick also claims that the district court improperly admitted evidence of Nigel McFarlane's dealings with Dominican and Colombian drug dealers as "other acts" evidence relating to Riddick's own conduct. Riddick fails to cite any part of the trial record or to specify what part of
McFarlane's testimony was allegedly objectionable. Thus, this claim is without merit.

5

C. Grand Jury Testimony

Riddick appeals the district court's denial of his motion
for a new trial by raising two arguments regarding grand
jury testimony. Riddick claims that the contents of a
newspaper article published six weeks before Riddick was
indicted showed that confidential grand jury testimony by
government witness Nigel McFarlane was leaked to the
press in violation of Fed.R.Crim.P. 6(e). The district court's
denial is reviewed for abuse of discretion. United States v.
Gilsenan, 949 F.2d 90, 95 (3d Cir. 1991). This argument is
without merit as Riddick has failed to cite any part of
McFarlane's grand jury testimony to support his claim.

Second, Riddick claims that the Government presented
misleading testimony to the grand jury or withheld
exculpatory testimony from the grand jury. All of the
"examples" cited by Riddick were refuted by the actual
transcripts of the grand jury proceedings. Thus, this
argument is also without merit.

D. Motion to Suppress Evidence

Riddick also claims that the district court erred in
denying his motion to suppress evidence from the 1994
search of his home at 1106 1/2 Tilghman Street, on the
grounds that: (1) the warrant contained stale facts, (2) the
warrant failed to list with particularity the items to be
seized, and (3) the agents seized items from 1108 Tilghman
Street, a location not listed in the warrant. Riddick did not
raise the first two claims in his suppression motion and
therefore the district court's denial is reviewed for plain
error. See Fed.R.Crim.P. 52(b).

Riddick's first two claims are without merit. The warrant
lists the items to be seized with sufficient specificity.
Moreover, the information in the warrant was not stale; it
showed an entrenched ongoing five-year drug operation in
which Riddick frequently used his home to conduct cocaine
transactions, and in which the most recent drug sale by
one of his employees occurred only six days before the
warrant was executed.

As for Riddick's third claim, the court reviews the district
court's denial of the motion to suppress for "clear error as

6

to the underlying facts, but exercise[s] plenary review as to its legality in light of the court's properly found facts." United States v. Inigo, 925 F.2d 641, 656 (3d Cir. 1991). The district court did not err in denying Riddick's motion to suppress all evidence seized during an August 12, 1994, search of his residence. Riddick failed to substantiate his claim that Government agents improperly searched an adjoining property. Rather, the suppression hearing testimony showed that the agents confined their search to the premises identified by the street address in the warrant.4 In addition, Riddick failed to show that the Government used any item seized from that space against him at trial, rendering any error harmless.

E. Illegal Monitoring of Conversations

Riddick claims that the district court erred in denying his motion to suppress all electronic surveillance on two grounds. We review the district court's factual findings for clear error and exercise plenary review of the legal issues involved. Inigo, 925 F.2d at 656. First, he argues that the government illegally intercepted his telephone conversation before obtaining a court order on December 10, 1993, authorizing surveillance. Riddick has failed to produce any credible evidence of Government misconduct. Rather, the Government's alleged premature monitoring of conversations consisted solely of information from court-authorized pen registers5 on Riley's telephone, which showed a clear pattern of calls to the pagers and telephones of co-conspirators such as Riddick. The pen registers also showed that after dialing a telephone or pager number, the caller then entered certain additional numbers indicating

_____

4. Riddick had modified the third floor of 1106 1/2 Tilgham Street, expanding it into space formerly belonging to 1108 Tilgham Street. Riddick's alterations, however, permanently made the extra space part of 1106 1/2 Tilgham by eliminating access to the bedroom from 1108 Tilgham. Therefore, the agents properly searched the space under the authority of the warrant.

5. A pen register is a "device which records or decodes electronic or other
impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached." 18 U.S.C. S 3127 (1994); see also In re Grand Jury Proceedings, 654 F.2d 268, 277 n.13 (3d Cir. 1981).

7

the price, drug quantity, or code to identify the customer.6 Second, Riddick alleges that the Government intercepted a call on December 14, 1993, originating on Riddick's mobile phone without court authorization. The evidence shows, however, that the Government monitored the telephone call as part of the court-authorized wiretap of Riley's home telephone. The Government produced direct testimony about the monitoring of this call as part of the Riley wiretap, and the original pen register tape showing that call originated from Riley's home telephone.

As none of Riddick's contentions have merit, we affirm the conviction.

II.

A. Sentencing for Distribution of Cocaine Near a School

The Government argues that the district court erred by refusing to sentence Riddick pursuant to USSG S 2D1.2, the Sentencing Guideline applicable for drug offenses occurring near a school.7 Section 2D1.2 should have been applied, the Government argues, because the Sentencing Guidelines require the use of the highest offense level within a group of counts. The standard of review of the district court's interpretation and application of the

_____

6. There were recordings made prior to December 1993, but they were made with the consent of one of the parties to the conversation and Riddick has not addressed these specifically.

7. Riddick argues that the Government has waived its right to appeal the court's failure to apply USSG S 2D1.2. Riddick relies on the Government's statement at the sentencing hearing, that regardless of whether the court sentenced Riddick under the CCE statute or the conspiracy statute the end result would be a life sentence, as evidence that the Government did not raise this guideline provision as an alternative sentencing option before the district court.

This argument is without merit. At the conclusion of the sentencing hearing the district court stated "[t]he Government urges that the counts involving distribution near a school are not lesser included offenses to the continuing criminal enterprise count, and therefore, I would have the option . . . to sentence to the higher amount," suggesting quite clearly that the Government raised the issue below.

8

Sentencing Guidelines is plenary. United States v. Hallman, 23 F.3d 821, 823 (3d Cir. 1994). The Government's argument is meritorious.

Section 3D1.2(d) of the Sentencing Guidelines states that multiple counts "involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm . . . when the offense level is determined largely on the basis of . . . the quantity of a substance involved." USSG S 3D1.2(d). Offenses covered by the USSG S 2D1.2 (distribution near a school) and USSG S 2D1.5 (continuing criminal enterprise offenses) are to be grouped together. USSG S 3D1.2(d). Moreover, in cases of grouping under S 3D1.2(d), "the offense guideline that results in the highest offense level is used." USSG S 3D1.2 comment. (n.6).

Applied here, the counts for distribution of cocaine near a school (21 U.S.C. S 860(a)) and for operating a CCE (21 U.S.C. S 848) are properly grouped together. See USSG S 3D1.2(d). The counts for distribution of cocaine near a school result in a higher offense level than the CCE count. While Riddick's offense level for CCE count is 42 pursuant to S 2D1.5,8 Riddick's offense level for distribution of cocaine near a school is 43. Specifically, the provision applicable for violations of S 860(a), USSGS 2D1.2, directs the court to add one offense level to "the offense level from S 2D1.1 applicable to the total quantity of controlled substances involved in the offense." USSG S 2D1.2(a)(2). Riddick's offense level from S 2D1.1 is 38 because the total quantity involved in the offense was more than 150 kilograms of cocaine. Thus, the base offense level would be 39, plus a 4-level increase under USSG S 3B1.1(a) for Riddick's role as leader or organizer of criminal activity involving five or more people.9 The total offense level is 43,

_____

8. Sentencing Guideline S 2D1.5 applies to the CCE count. Here, the base offense level is 4 plus the offense level fromS 2D1.1, for a total of 42, mandating a sentence of 360 months to life.

9. Riddick did not contest the four level increase pursuant to USSG S 3B1.1(a) on appeal. Riddick, however, appealed the sufficiency of the CCE conviction involving the same facts. In part IB, supra, we concluded that there was sufficient evidence on this point to sustain the jury's verdict.

9

mandating a sentence of life imprisonment. Thus, under USSG S 3D1.2(d), the district court should have applied S 2D1.2 and sentenced Riddick to life imprisonment.

The district court, however, sentenced Riddick on the CCE count based on its perception that operating a continuing criminal enterprise constituted a more serious offense than the offense of distributing cocaine near a school or playground and thus the distribution count merged with the CCE count for sentencing purposes. The district court's perception of the seriousness of the crime does not provide a basis on which the court may disregard the explicit instructions of the Sentencing Guidelines. The Guidelines do not direct the court to make a subjective determination of which count is the most severe or onerous in determining the sentence. See USSG S 3D1.2(d). Rather, the Guidelines suggest that the severity of the offense is fully accounted for in the court's calculation of the offense level. Thus, the district court erred.

Moreover, even assuming arguendo that it is improper to impose a higher penalty for a "lesser included offense" than for the more serious offense, substantive predicate offenses involved in a CCE conviction, such as Riddick's violation of 21 U.S.C. S 860(a) for distributing cocaine in the vicinity of a school, are not lesser included offenses of the CCE count. The issue of whether one count is the lesser included offense of another arises when the court is confronted with two distinct statutory provisions applicable to the same criminal act. In such a situation, the court will look at "whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). The traditional test does not apply, however, where "there is a clear indication of contrary legislative intent." United States v. Rivera–Martinez, 931 F.2d 148, 154 (1st Cir. 1991) (quoting Missouri v. Hunter, 459 U.S. 359, 367 (1983)). As the Supreme Court stated in Garrett v. United States, 471 U.S. 773, 779 (1985), "[t]he language, structure, and legislative history of the Comprehensive Drug Abuse, Prevention and Control Act of 1970, . . . show in the plainest way that Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses."

10

Further, the language of Garrett is not contradicted by Rutledge v. United States, 517 U.S. 292, 300 (1996), in which the Court held that conspiracy to distribute controlled substances is a lesser included offense of the CCE offense because the conspiracy count does not require proof of any fact that is not also an element of the CCE count. Thus, a sentence for conspiracy to distribute controlled substances in addition to a concurrent CCE offense sentence amounted to an improper cumulative second punishment. Id. at 302–03. Rutledge, however, explicitly distinguished Garrett as a case"adher[ing] to our understanding that legislatures have traditionally perceived a qualitative difference between conspiracy-like crimes and the substantive offenses upon which they are predicated. . . . In contrast to the crime[ ] [of importing marijuana] involved in Garrett, this case involves two conspiracy-like offenses directed at largely identical conduct." Id. at 301 n.12.

As various Courts of Appeals decisions recognize, the Supreme Court has made clear that while a defendant may not be sentenced, even concurrently, to both a conspiracy conviction and a CCE conviction because one is the lesser included offense of the other, the same rule does not apply when the predicate offense is a separate substantive offense. Substantive predicate offenses do not merge with the CCE count. See United States v. Grayson, 795 F.2d 278, 287 (3d Cir. 1986) (stating in dicta that under Garrett, the Double Jeopardy clause does not bar cumulative punishments for CCE and underlying substantive predicate offenses); Rivera-Martinez, 931 F.2d at 154 (finding no constitutional impediment to the imposition of cumulative sentences on the CCE count and on the predicate substantive count of aiding and abetting); United States v. Morrow, 929 F.2d 566, 568 (10th Cir. 1991) (holding that the manufacture of methamphetamine count was not the lesser included offense of the CCE count, court affirmed sentence imposed on manufacture count); United States v. Jones, 918 F.2d 909, 909–10 (11th Cir. 1990) (holding that "[w]hen the predicate act is a substantive violation of the narcotics laws, as distribution is, the substantive violation does not merge into the CCE count").

11

Thus, the district court was not precluded from sentencing Riddick on the counts for distribution of cocaine near a school. Accordingly, we conclude that the district court erred by failing to sentence Riddick to life imprisonment pursuant to USSG S 2D1.2 for his conviction under 21 U.S.C. S 860(a) and for his role as an organizer pursuant to USSG S 3B1.1(a).

Riddick's challenge to the district court's factualfindings does not affect the court's conclusion. Riddick argues that even if the court concludes that he is to be sentenced under USSG S 2D1.2, he should not receive a life sentence. Riddick bases this claim on his belief that the court made the erroneous factual finding that 150 kilograms of cocaine were attributable to him. With an accurate assessment of the quantity of cocaine a lower base offense level would apply and would preclude a sentence of life in prison.

As proof of the inaccuracies, Riddick states that the court added quantities for which there was no record evidence presented or dates setting forth when the transactions occurred. Even allowing for the 75 kilograms assessed to him in 1993, Riddick argues that the Government can prove that he distributed no more than 108.75 kilograms of cocaine and even this amount was based on improperly drawn inferences from testimony of a man who was in prison for at least part of the time he was allegedly making sales to Riddick. Finally, Riddick contends that any conclusion that he was responsible for the total quantity of drugs involved in the CCE was in error because the district court did not make a finding that it was reasonable to impute knowledge of all the conspiracy's criminal conduct to him. As indicated previously, however, the district court made clear factual findings based on equally clear reasoning. Riddick has presented nothing to suggest that the court's detailed factual finding that he was responsible for 150 kilograms of cocaine, an estimate significantly lower than either that of the Government or of the probation officer, is clearly erroneous.

12

III.

In sum, we affirm the conviction, vacate the sentence, and remand for resentencing in accordance with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

13