

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2005

# USA v. Patrick

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1721

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Patrick" (2005). *2005 Decisions*. Paper 1574.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1574

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1721
_____

UNITED STATES OF AMERICA

v.

NEFTALI  LAMAR  PATRICK,

<u>Appellant</u>

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 3:CR-03-212)
District Judge: Honorable William J. Nealon

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 6, 2004

BEFORE: AMBRO and VAN ANTWERPEN, <u>Circuit Judges</u>, and SHADUR, <u>Senior
District Judge</u>*

(Filed January 6, 2005)

_____

OPINION
_____

_____
* Honorable Milton I. Shadur, U.S. District Court for the Northern District of Illinois,
sitting by designation.

VAN ANTWERPEN, <u>Circuit Judge</u>

Following a jury trial, defendant Neftali Lamar Patrick ("Patrick") appeals his conviction under 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime. He alleges (1) the evidence was insufficient to sustain his conviction, and (2) physical evidence and statements to police supporting that conviction should have been suppressed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

I.

On July 17 and 18, 2003, police in Luzerne County, Pennsylvania made two controlled purchases of heroin from Patrick. At about 5:00 p.m. on July 30, 2003, police, who had a warrant for Patrick's arrest, stopped and arrested him immediately after he left his residence. Upon a search of Patrick's person incident to arrest, police found four grams of cocaine base packaged in eighteen bags inside a larger Ziploc bag. Patrick was then taken to the Wilkes-Barre police station, where an officer orally advised him of his *Miranda* rights. Patrick was also shown his *Miranda* rights in writing. Patrick stated that he could read his rights, that he understood them, and that he was willing to answer questions. In response to one question, he stated that he had stopped selling "dope," or heroin, and was now dealing crack obtained from a supplier in New York. When Patrick was asked for consent to search his home, he said no, telling police they would need to get a warrant.

The police prepared a search warrant affidavit sworn by a detective with seven

2

years of experience in the narcotics unit. The affidavit detailed the controlled purchases on July 17 and 18 and a two-week period of surveillance of Patrick entering and leaving his residence at all hours of the day and evening. After leaving his residence, he would proceed to one of three locations, including the location where the controlled purchases were made. At these locations, Patrick would meet briefly with unknown persons and then return to his residence. The detective stated, based on his training and experience, that the meetings between Patrick and unknown persons were consistent with drug transactions. The affidavit also recited Patrick's arrest earlier that day and the seizure from his person of cocaine base packed in small bags. In addition, the affidavit contained information about the informant used by police to set up the controlled purchases from Patrick on July 17 and 18. The informant had given past information that led to the arrest and convictions of five drug traffickers, and the police had been able to corroborate the information about Patrick through surveillance and the controlled purchases.

About 9:00 p.m. that night, police executed a court-authorized search of Patrick's residence, and a search under a mattress in Patrick's bedroom revealed approximately $4,000 in cash and three guns: a loaded short-barreled shotgun, a loaded NEF .22 revolver, and an unloaded Jennings .22 pistol. Within a few feet of the weapons and the cash under the mattress were approximately forty grams of crack cocaine in a man's sneaker, two scales, ammunition, and boxes of baggies.

Police returned from the search of Patrick's residence at approximately 11:15 p.m.

and told Patrick what they had found. An officer orally reminded Patrick of his *Miranda* rights, and Patrick said again that he understood them and was willing to be questioned. When asked where he obtained the guns found in his residence, Patrick said he had obtained them from his drug customers, but he refused to identify who they were.

Prior to his trial, Patrick moved to suppress both the physical evidence recovered from the search of his residence and the statements he made after his arrest. After an evidentiary hearing, the District Court denied both motions on November 18, 2003.

At trial, a jury convicted Patrick of (1) delivery of a controlled substance, in violation of 21 U.S.C. § 841(a)(1); (2) possession of a controlled substance (cocaine base) in excess of 5 grams with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B); (3) carrying a firearm during and in relation to a drug trafficking crime and/or possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I) and (B)(1); and (4) possession of a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).[1]

## II.

Patrick's brief first claims insufficient evidence existed to sustain his conviction for possession of a firearm in furtherance of a drug trafficking felony, 18 U.S.C. § 924(c).

---

[1] Patrick does not appeal his convictions under 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), or 18 U.S.C. § 922(g)(1). Although Patrick appeals his conviction under § 924(c)(1)(A) for carrying a firearm during and in relation to a drug trafficking crime, we need not discuss this offense further because we find that the evidence supports a conviction under the same Section for possession of a firearm in furtherance of a drug trafficking crime.

4

In reviewing whether the evidence was sufficient to support a finding of guilt, we must consider the evidence "in the light most favorable to the government," as verdict winner, and the judgment should be affirmed "if there is substantial evidence from which any rational trier of fact could find beyond a reasonable doubt." *United States v. Williams*, 344 F.3d 365, 369-70 (3d Cir. 2003). Here, the jury found Patrick guilty of "possessing" a firearm "in furtherance of" a drug trafficking crime. 18 U.S.C. § 924(c).[2] Because the predicate drug trafficking crime is satisfied by Patrick's uncontested conviction of possession with intent to distribute in excess of five grams of cocaine base, 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), the only issue is whether the evidence is sufficient to support a finding that Patrick possessed a firearm in furtherance of that crime.

Patrick's brief argues that this Court has never determined the precise boundaries of the "in furtherance of" element of Section 924(c). Since the filing of Patrick's brief, we explained in *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004), that "[u]nder § 924(c), the mere presence of a gun is not enough. What is instead required is evidence

---

[2] Section 924(c) provides in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, *or who, in furtherance of any such crime, possesses a firearm*, shall, in addition to such punishment provided for such crime of violence or drug trafficking crime – [be sentenced to a certain number of years depending on the facts of the crime] . . .

18 U.S.C. § 924(c) (emphasis added).

more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense . . . . Put another way, the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *Id.* (internal citations and quotations omitted). *Sparrow* also discussed what type of factors may be relevant to the "in furtherance of" element:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* at 853.[3] In *Sparrow*, we found that one loaded .22 caliber pistol found in a concealed floor compartment along with nine Ziploc bags of marijuana and $140 in cash was "possessed in furtherance of Sparrow's drug activities." *Sparrow*, 371 F.3d at 852-54. This result, we observed, was consistent with opinions from other courts upholding § 924(c) convictions where "the firearm in question was not so easily or immediately accessible." *Id.* at 853 (discussing cases).

The evidence here similarly supports the § 924(c) conviction of Patrick. Patrick

---

[3] Congress amended § 924(c) in 1998, adding the "in furtherance of any such crime, possess a firearm" prong of the statute in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 147 (1995). Prior to the amendment, the government was required to prove that the defendant used or carried the firearm in connection with a crime. In *Bailey,* the Court of Appeals for the District of Columbia Circuit had affirmed a conviction for "use" of a weapon in relation to a drug crime based on a gun locked in a trunk. *United States v. Bailey*, 36 F.3d 106 (D.C.Cir. 1994). The Supreme Court rejected such a broad interpretation of "use," holding that "use" required some active employment. *Bailey*, 516 U.S. at 144. Congress then responded by adding the "in furtherance of" provision to § 924(c).

possessed not one weapon, as in *Sparrow*, but rather three weapons, and he possessed all three of them illegally as a convicted felon. Two of them were loaded, including a short-barreled shotgun. All three weapons were found under a mattress next to about $4,000 in cash, a sum far greater than the $140 found in *Sparrow*. Finally, within a few feet, in the same room, were forty grams of crack cocaine, two scales, other drug paraphernalia, ammunition, and boxes of baggies. "Even assuming . . . the firearm[s] [were] not easily accessible, [they] were strategically located. The gun[s] [were] placed so that [they] would be immediately available for [Patrick's] protection whenever he retrieved drugs or money from" his bedroom. *Sparrow*, 371 F.3d at 854. The facts of this case thus easily satisfy us that there existed sufficient evidence to support the "in furtherance of" element required for Patrick's § 924(c) conviction.

### III.

Patrick next contends the guns and the statement he made about them should have been suppressed. We review the denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over questions of law. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (citing *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998)).

Patrick contends evidence of the guns should have been suppressed because the warrant to search his residence lacked probable cause. Although he concedes some degree of probable cause existed because of his drug sales on July 17 and 18, 2003, and

7

the discovery of baggies of drugs on his person on July 30, he contends probable cause was nevertheless lacking to connect his residence to those drug activities. We disagree.

Our review of an initial probable cause determination underlying a warrant to search is deferential. *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000). We must "determine whether the magistrate who issued the warrant had a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002). Here, given Patrick's concessions and our review of the record evidence, the affidavit of probable cause readily linked Patrick's drug trafficking activities to his residence. First, surveillance of Patrick demonstrated trips in and out of his residence, day and night, to conduct what experienced and trained narcotics officers believed to be drug transactions. They observed Patrick repeatedly going to and from his residence to one of three locations to meet people for brief periods of time. Patrick used his residence as a hub, as he was observed returning to his residence after each short trip. Second, on the day of Patrick's arrest and search incident to arrest, which revealed his possession of drugs packaged for distribution, he was observed to have come directly from his residence, and had not stopped anywhere else before his arrest.

While Patrick asserts this evidence provides no direct link between his residence and his drug activities, we have stated that "direct evidence linking the crime to the location to be searched is not required to support a search warrant." *Whitner*, 219 F.3d at 297. "Probable cause can be, and often is, inferred by considering the type of crime, the

8

nature of the items sought, the suspect's opportunity for concealment, and normal inferences about where a criminal might hide" controlled substances. *Id.* Here, each of these factors, in light of the above information, supported a conclusion of probable cause. Indeed, we have previously found that, in drug cases, "evidence . . . is likely to be found where drug dealers reside." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). A sufficient nexus between the items to be searched and the place to be searched may be established by direct evidence or inferences. *United States v. Martinson*, 811 F.Supp. 1097, 1105 (E.D.Pa. 1993). As such, the District Court did not err in denying Patrick's motion to suppress the evidence found in his residence, as there was a substantial basis for determining that probable cause existed.

Similarly, the District Court did not err in denying Patrick's motion to suppress his statement about the guns found at his residence. Patrick contends his statement was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), because (1) police failed to re-advise him of his *Miranda* rights approximately five hours after he had first been advised of them earlier the same evening, and (2) police detained him for a total of approximately seven hours.

In determining whether Patrick's waiver of his *Miranda* rights was voluntary, knowing, and intelligent, we must first ask whether the waiver was voluntary "'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989)

(quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). We must then ask whether the waiver was "'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* In so doing, we must examine the totality of the circumstances. *United States v. Dickens*, 695 F.2d 765, 778 (3d Cir. 1983). *See also Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986).

Here, the record supports the District Court's findings that Patrick was advised of his *Miranda* rights both at the time of his arrest and again some five hours later, after the search of Patrick's residence. The first time, Patrick was advised of his rights orally and in writing from an officer's *Miranda* card; the second time, he was reminded of his rights orally. Both times, the District Court found, Patrick was sufficiently advised of his rights and he understood those rights. For example, during the first period of questioning, Patrick demonstrated awareness of his rights and the consequences of abandoning them when he withheld his consent to the search of his residence, telling police they would have to get a warrant. Similarly, during the final questioning session, Patrick declined to identify his sources for the guns discovered in his bedroom. These interactions occurred within a seven hour period during which the District Court found, and the record shows, no evidence of deliberate delay, exploitation, threats, promises, or other improper actions on the part of the police to overcome Patrick's free will. Moreover, Patrick does not contend, nor does the record indicate, that he attempted to invoke his right to counsel. Under the totality of these circumstances, the District Court did not err in concluding that

the statement Patrick sought to suppress was "the product of an essentially free and unconstrained choice" by Patrick to answer selected questions. *Dickens*, 695 F.2d at 778 (finding confession voluntary despite, *inter alia*, delay of nine hours between arrest and confession). As such, we find no error with the District Court's conclusions of law or findings of fact underlying the denial of Patrick's motion to suppress his statement. Finally, to the extent Patrick's brief raises other contentions about his statement, we have considered those arguments and conclude that they are without merit and no further discussion is necessary.

For the foregoing reasons, we will affirm the judgment of the District Court.