**UNITED STATES of America,**

v.

**Harold TONEY, a/k/a Darren Gram, a/k/a Harold Thompson Harold Toney, Appellant.**

**No. 03–1616.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 18, 2004.

Decided Feb. 8, 2005.

---

**714**

George J. Shotzbarger, Office of United States Attorney, Philadelphia, PA, for Appellee.

Marc J. Frumer, Frumer & Etkin, Philadelphia, PA, for Appellant.

Before SCIRICA, Chief Judge, MCKEE and CHERTOFF,* Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

While operating a vehicle in Northeast Philadelphia on January 21, 2002, appellant Harold Toney was stopped and searched by the Philadelphia police. Toney was found to be carrying a loaded .357 magnum pistol, and was charged with one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Toney moved to suppress the gun, contending that the stop and seizure had been conducted in violation of the Fourth Amendment. Following a two-day suppression hearing, the District Court granted Toney's motion with respect to his statement that he did not have a gun permit, because Toney had not been advised of his *Miranda* rights. The Court denied defendant's motion with respect to the gun, however, finding the officers possessed a reasonable suspicion of criminal activity sufficient to justify the stop. Toney pled guilty on October 28, 2002, but preserved his right to appeal the District Court's suppression ruling. We will affirm.

During the course of an ongoing narcotics investigation in Northeast Philadelphia, Philadelphia police officers repeatedly observed a green Dodge Intrepid sedan in the vicinity of 12th and Huntingdon Streets, an area believed to house a major heroin sales outlet. After observing the driver of the Intrepid engage in what three undercover officers believed to be a heroin transaction, they sought to identify the driver. They provided the location of the vehicle over police radio and requested that a marked police car make a stop. The officers also reported that the vehicle had an illegal license plate.

Officers William Devine and Charles Taylor responded to the call, followed the Intrepid, and stopped it. Before approaching the car, Devine checked the validity of the Intrepid's license plate with the Pennsylvania Bureau of Motor Vehicles by typing it into the mobile data terminal in the police car. The BMV check revealed that license plate number ELT–3565, which was displayed on the Intrepid, belonged to a 1993 Chevrolet station wagon registered to a couple in Clarion County, Pennsylvania. Having confirmed the illegal plate display, Officer Devine approached the car.

After observing suspicious activity, during which Toney appeared to be reaching around his back several times in violation of orders to keep his hands in view, Officer Devine ordered Toney to exit the car and put his hands on the roof of the car. He conducted a safety pat-down, felt what he believed to be the handle of a gun, and discovered the .357 magnum Rossi revolver. At the suppression hearing the Dis-

---

* This case was originally submitted to the three-judge panel of Scirica, *Chief Judge,* McKee and Chertoff, *Circuit Judges.* Judge Chertoff subsequently recused. Because the remaining two judges agreed on the opinion and disposition of the case, it was unnecessary to assign a third judge. *Linde v. Phelps,* 731 F.2d 1201 (5th Cir.1984); *Murray v. Nat'l Broadcasting Co.,* 35 F.3d 45 (2nd Cir.1994).

trict Court heard testimony and argument and concluded the stop, pat-down, and seizure were reasonable under the circumstances. We agree.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[ ] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir.2002) (citing *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir.1998)).

"An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). While the reasonable suspicion requirement is a "less demanding standard than probable cause and a requires a showing considerably less than preponderance of the evidence," it nonetheless requires an officer to articulate an "objective justification for making the stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

In this case, Toney was operating a vehicle with an invalid license plate. Because of this traffic violation, Office Devine was justified in making the initial stop. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (holding that traffic stops are justified under the Fourth Amendment where the officer has a reasonable suspicion that either the motorist or the vehicle are in violation of the law); *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir.1997) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."); *United States v. Kikumura*, 918 F.2d 1084, 1092 (3d Cir.1990) (traffic stop reasonable where officer observed defendant violating traffic code); *see also* 75 Pa. Cons.Stat. § 6308(b) (authorizing police officers to conduct a traffic stop where there is a reasonable suspicion of a traffic code violation).

Toney argues the stop was unconstitutional because, despite the mismatched license plate, the true motivation for the stop was to identify him as a potential suspect in the drug trafficking investigation. The Supreme Court's holding in *Whren*, however, forecloses this line of argument entirely. *See Whren*, 517 U.S. at 810 (where police have reason to believe traffic violation has occurred, their actual motives in conducting a traffic stop—such as investigation of narcotics activity—are irrelevant). Furthermore, given Toney's suspicious behavior and repeated failure to comply with the officer's orders, Officer Devine was justified in ordering Toney out of the car, *see Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), and conducting a safety pat-down. *See Terry*, 392 U.S. at 30.

Officer Devine's stop and frisk of appellant Toney was based upon an articulable and reasonable suspicion of criminal activity, and was lawful. The evidence obtained as a result of these actions, therefore, need not be suppressed. We will affirm the

judgment of the District Court.[1]

---

1. With respect to Toney's claim that the government committed a *Brady* violation by failing to disclose that Corporal Stanford Jones of the Narcotics Field Unit was the subject of criminal investigations, we find this issue is not properly before the Court. Toney has not raised this claim in the District Court and there is no record on the issue.