

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-22-2005

# USA v. Spivey

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Spivey" (2005). *2005 Decisions.* Paper 1439.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1439

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-2057
_____

UNITED STATES OF AMERICA

v.

LAWRENCE SPIVEY,
a/k/a Darryl Spivey

Lawrence Spivey,

<u>Appellant</u>

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00562-1)
District Judge: The Honorable Michael M. Baylson

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 8, 2005

BEFORE: SCIRICA, <u>Chief Judge</u>, and ROTH and VAN ANTWERPEN, <u>Circuit Judges</u>,

(Filed   March 22, 2005 )

_____

OPINION

_____

VAN ANTWERPEN, <u>Circuit Judge</u>,

Appellant Lawrence Spivey appeals his conviction and sentence imposed by the

District Court (Baylson, J.) on two grounds.  Spivey first claims that the police stopped

and frisked him without reasonable suspicion in violation of his Fourth Amendment rights. Second, Spivey claims that his sentence violated his rights under the Sixth Amendment because the District Court applied sentencing enhancements based on a judicial determination of facts not charged in the indictment, admitted by the defendant, or found beyond a reasonable doubt. For the reasons set forth below, we affirm the conviction, vacate the sentence, and remand for resentencing.

## I. FACTUAL AND PROCEDURAL HISTORY

A.    Facts Relevant to the Suppression Claim

On June 24, 2002, at approximately 5:50 pm, two Philadelphia police officers drove past Spivey on the 6200 block of Belfield Street and, according to their testimony, thought that he resembled Aaron Thomas, a man who was wanted by the FBI and the Philadelphia Police Department for bank robbery. The officers were carrying with them a "wanted flyer" containing a color photograph of Thomas' head, shoulders, and face. The flyer also gave a limited verbal description of Thomas, listing his race ("black"), sex ("male"), weight ("180"), height ("5'9""), hair color ("black"), age ("23"), and date of birth ("4/11/79"). The flyer also stated:

> Thomas is wanted for the robbery of the Citizens Bank 6234 Stenton Ave. on 4/29/02. His last known addresses are 545 E. Mayland St. and 538 Tulpehocken St. Thomas may frequent the areas of Chew and Washington Lane and Musgrave St. and Washington Lane. He has previous VUFA arrests and should be considered armed and dangerous.

> After driving past Spivey and agreeing that he resembled Thomas, the officers

2

circled the block to return to where they had initially seen him. While circling the block, one of the officers looked again at the wanted flyer. They then saw Spivey walking away from the spot where they had initially seen him and towards the intersection of Belfield Street with Mayland Street and Chew Avenue.

The officers got out of their car and, while Spivey was 15-20 feet away from them, asked him to speak with them. Spivey paused, sighed, looked around, and stated, "I didn't do anything." App. at 54, 89. One of the officers explained that he was looking for someone in the area, and Spivey replied, "It's not me." Id. at 90. The officers then asked for identification, and Spivey responded that he did not have any and walked towards the officers. According to their testimony, the officers believed that Spivey was an armed and dangerous robbery suspect, so they decided to "pat[] him down for weapons." Id. at 91. Spivey complied when the police asked him to place his hands on the patrol car, and one of the officers frisked him. The frisk uncovered a gun in Spivey's back pocket.

On September 2, 2003, Spivey was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On October 3, 2003, Spivey moved to suppress the gun on the grounds that the police did not have reasonable suspicion to stop and frisk him. He argued that his appearance did not sufficiently match the description or photograph of Aaron Thomas to give rise to a reasonable suspicion.

After a December 5, 2003, suppression hearing, the District Court agreed that Spivey's appearance was different from the photograph of Aaron Thomas in several respects. For instance, the picture showed Thomas to have a dark complexion, whereas Spivey has a more medium complexion. In addition, Spivey is bald, and the photo showed Thomas with a full head of hair. One of the officers also acknowledged that Spivey has narrower eyebrows than Thomas did in the photograph. Spivey also has a small scar under his left eye, and there was no similar scar visible in the photograph of Aaron Thomas. Most significant, however, was the difference in weight between Thomas and Spivey. The flyer listed Thomas' weight as 180 pounds, and Spivey stated that he weighed 230 pounds.

On the other hand, the District Court noted several similarities between Spivey and the information contained on the flyer. The two men had similar heights (Spivey is 5'8") and are close to the same age (Spivey was 28 years-old at the time). Spivey's facial hair was also similar to Thomas' facial hair in the photograph. The most significant similarity between Spivey and the photo of Thomas is that they both have "fairly full" and "round faces." Id. at 132. Furthermore, the officers encountered Spivey in an area where Thomas was known to frequent, according to the flyer.

The District Court also credited the testimony of the two officers and accepted the government's reasons for discounting the differences between Spivey's appearance and the photograph of Thomas. For example, the police testified that they did not find the fact

4

that Spivey's head was shaved to be a significant factor in determining whether he matched the description of the robbery suspect because Thomas could have shaved his head after robbing the bank. In addition, although Spivey's scar was visible from seven feet away in a courtroom, the police explained that they initially observed him from at least 15 feet away and did not see a scar. With respect to the difference in weight, the police testified that, although Spivey described his own weight as 230 pounds, he did not look that heavy when they observed him on the street wearing "baggy" clothing, which covered some of his bulk. Moreover, wanted flyers often do not accurately describe a suspect's weight. One officer stated that, because some of the height and weight information on flyers can be old or inaccurate, they "go by, more the picture, his face compared to the picture." Id. at 49. Finally, the District Court found that, even though the weight is "a little different," their frames are the same. Id. at 132, 170.[1]

In the end, the District Court concluded, "I don't think they're that different," and that "the similarities are much more than the differences." Id. at 132. The court therefore found that the police reasonably believed that Spivey was the man wanted for bank robbery and acted reasonably in stopping him. The District Court also noted that the frisk was reasonable in light of the statement on the wanted flyer that Thomas may be armed and dangerous. Finally, the District Court found that it was reasonable for the officers to

---

[1]At the suppression hearing, Judge Baylson initially said, "The weight is a little different, but the frame is different – the frame is the same . . . ." App. at 132. At the sentencing hearing, however, Judge Baylson corrected this statement on the record and stated that he "intended to say: the weight is a little different, but the frame is the same." Id. at 170.

rely on the fact that Spivey was not carrying identification and could not give them any reason to believe that he was not Thomas. As such, the District Court found that the police had reasonable suspicion to search Spivey and therefore denied the Motion to Suppress.

B.      Facts Relevant to the Sentencing Claim

On January 14, 2004, Spivey plead guilty to one count of possession of a firearm by a felon but reserved the right to appeal from the District Court's unfavorable ruling on the Motion to Suppress. The District Court held a sentencing hearing on April 15, 2004, and sentenced Spivey to 66 months in prison, to be followed by three years of supervised release. In determining this sentence, Judge Baylson adopted the recommendations of the United States Probation Office contained in its Presentence Investigation Report ("PSR"). Basing those recommendations on the United States Sentencing Guidelines, the PSR assigned Spivey a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2) because of his two previous controlled substance convictions. The court then applied a three-level downward adjustment based on Spivey's acceptance of responsibility under U.S.S.G. § 3E1.1. The court finally arrived at a Guidelines sentencing range of 57-71 months by applying a criminal history category of IV to Spivey's total offense level of 21.

Spivey's criminal history category was set at IV based on his 9 criminal history points. Spivey does not dispute the applicability of 6 criminal history points, which were based on his two prior controlled substance convictions. On appeal, however, he argues

that the application of the other 3 criminal history points violates his Sixth Amendment rights because they were based on facts not admitted or proved beyond a reasonable doubt. Two of these points were assigned based on the judge's finding that Spivey committed the instant offense while on parole. See U.S.S.G. § 4A1.1(d). The other point was assigned based on the judge's finding that Spivey committed the instant offense less than two years after his release from prison. See U.S.S.G. § 4A1.1(e). Had Spivey only received 6 criminal history points, his criminal history category would have been set at III, and his sentencing range under the guidelines would have been 46-57 months.

At the sentencing hearing, Spivey declined to object to the findings contained in the PSR. App. at 158. He also admitted that he was on parole when he committed the instant offense, id. at 159, 164, and initially agreed to his criminal history category being set at level IV, id. at 158. Spivey's counsel agreed that the applicable Guidelines range was 57-71 months and only argued the issue of where in the Guidelines range Spivey's sentence should fall. Id. at 158-59.

## II. DISCUSSION

A.    Fourth Amendment Claim

1.    *Standard of Review*

"This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." United States v. Perez, 280 F.3d 318, 336

7

(3d Cir. 2002). We thus review *de novo* the District Court's conclusion that the officers in this case had reasonable suspicion to stop and frisk Spivey. United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000) (citing Ornelas v. United States, 517 U.S. 690 (1996); United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998)).

2.      *Analysis*

It is without dispute that the officers' stop and frisk of Spivey amounted to a seizure under California v. Hodari D., 499 U.S. 621, 626-28 (1991), thereby triggering the Fourth Amendment protection against unreasonable searches and seizures. See also Terry v. Ohio, 392 U.S. 1, 19 (1968). Under the Supreme Court's ruling in Terry, the police may, consistent with the Fourth Amendment, stop and frisk individuals without probable cause *if* they have a reasonable, articulable suspicion that criminal activity is afoot. Id. at 20-22; see also Illinois v. Wardlow, 528 U.S. 119, 123 (2000). It is clear that, had the police seen Aaron Thomas walking on the street, they at least would have had sufficient reasonable suspicion, based on the information contained on the wanted flyer, to conduct an investigative stop. See United States v. Hensley, 469 U.S. 221, 227-33 (1985) (finding reasonable suspicion based on information contained in a wanted flyer, even where the suspected criminal activity had been completed and was no longer imminent or ongoing).[2]

_____

[2] Although the parties do not argue the issue on appeal, it also appears that the District Court was correct to find that the statement on the wanted flyer that Thomas could be armed and dangerous would be sufficient to justify searching him for weapons under Terry. See Hensley, 469 U.S. at 235 (a search of a suspect's vehicle for weapons "was well within the permissible range in the context of suspects who are reported [in a wanted flyer] to be armed and dangerous." (citing Michigan v. Long, 463 U.S. 1032, 1049-50 (1983); Pennsylvania v. Mimms, 434 U.S.

This case thus boils down to whether or not the officers who stopped Spivey had a reasonable, good faith belief that he was in fact Aaron Thomas. Hill v. California, 401 U.S. 797, 802 (1971) (probable cause to arrest one suspect gives rise to probable cause to arrest an individual whom the police reasonably believe is that suspect).

On appeal, Spivey focuses on the differences between his appearance and the description and photo of Thomas. We agree with the District Court that there are some differences to be found. However, it is not the task of the Court of Appeals to conduct an isolated review of each factor relied on by the officers and the District Court in determining that there was reasonable suspicion to stop Spivey. United States v. Arvizu, 534 U.S. 266, 274 (2002). The Supreme Court stated in Arvizu that Terry "precludes this sort of divide-and-conquer analysis." Id. Instead, appellate courts must review the "totality of the circumstances" relied on in making the reasonable suspicion determination. Id. at 273; see also United States v. Sokolow, 490 U.S. 1, 8-9 (1989); United States v. Cortez, 449 U.S. 411, 417 (1981); Valentine, 323 F.3d at 353.

In reviewing the totality of the circumstances, we give substantial deference to both the District Court's factual determinations and the inferences drawn by the officers on the scene. Ornelas, 517 U.S. at 699; Valentine, 232 F.3d at 355. Here, the District Court found that the officers who stopped Spivey were credible, that there were important similarities between Spivey and Thomas, and that the "similarities are more than the

_____

106, 110-11 (1977) (per curium))).

9

differences." These are all factual findings that we will not disturb absent clear error.[3]

Furthermore, the totality of the circumstances surrounding Spivey's stop and frisk support the District Court's legal conclusion that the police acted with reasonable suspicion. The patrolling officers saw a man who they believed, in good faith,[4] had similar facial features to a suspected armed robber in a high-crime area where the suspect was known to frequent. Both men had "fairly full" and "round faces" and were similar in height and age. Although there is a difference in weight between the two men, the police acted reasonably in relying more on their comparison of Spivey's face to Thomas' photograph because, based on their experience, the weight information on wanted flyers is often old and inaccurate. Moreover, the officers stopped Spivey two months after Thomas allegedly robbed the bank, and it is not unreasonable to think that he could have gained weight in that time. In addition, Spivey was wearing baggy clothing when the officers stopped him, making it difficult to accurately assess his weight.[5] Finally, the

---

[3] Upon reviewing photographs of Spivey and Thomas, we cannot say that the District Court's finding that the two men had a number of similar facial features was clearly erroneous.

[4] As noted, we defer to the District Court's finding that the officers were credible and that they were acting in good faith.

[5] Cf. United States v. Lawes, 292 F.3d 123 (2d Cir. 2002). The Second Circuit in Lawes was faced with a factual background very similar to the case before us. In Lawes, the police were looking for a murder suspect and were relying on a mugshot along with a description of the suspect's age, race, weight, height, and scars. They stopped the defendant believing that he was the murder suspect. The defendant was actually taller and weighed 40 pounds more than the suspect and had a distinctive scar on his face. The Second Circuit, considering all of the relevant circumstances, upheld the District Court's finding of reasonable suspicion, "notwithstanding some differences," because the two men had similar facial features. Id. at 127. The Second Circuit also noted that the District Court had credited the officers' testimony and accepted the

10

District Court was correct to note that the officers reasonably relied on Spivey's failure to produce identification to dispel their suspicion that he was Aaron Thomas. Cf. Hill, 401 U.S. at 803 & n.9 (the defendant's ability to produce identification indicating that he was not the suspected armed robber the police were looking for was "entitled to little weight" because "aliases and false identifications are not uncommon.").[6]

Because the police acted based on their reasonable, good faith belief that Spivey was an armed and dangerous robbery suspect, we agree with the District Court that the stop and frisk of Spivey was justified by reasonable suspicion. We therefore affirm the District Court's denial of Spivey's Motion to Suppress.

B.    Sixth Amendment Claim

   1.    *Standard of Review*

Because this case was pending on direct review at the time of the Supreme Court's decision in United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), we will apply the ruling of that case. We may only review Spivey's sentence for plain error, however, because he failed to raise a Sixth Amendment objection in the District Court. See id. at

---

explanation for disregarding the difference in weight – that the defendant was wearing a heavy coat when the officers saw him. Id.

   [6] On appeal, Spivey argues that he should not be faulted for his failure to carry identification, as it was not unusual under the circumstances to leave home without identification. Spivey is correct to point out that the failure to carry identification on its own does not create a reasonable suspicion. As noted, however, we must view the totality of the circumstances. Once the police reasonably believed that Spivey was an armed and dangerous robbery suspect, the fact that he could not produce identification to the contrary adds to the mix of facts facing the police when they determined whether or not an investigative stop was warranted.

11

769; United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001).

    2.    *Analysis*

Under Booker and Apprendi v. New Jersey, 530 U.S. 466, 488 (2000), courts are permitted to base sentences on facts admitted by the defendant. Under the Guidelines, counsel's admission that Spivey was on parole when he committed the instant offense may have been sufficient to raise Spivey's criminal history score from 6 to 8. See U.S.S.G. § 4A1.1(d). As such, even without the additional enhancement for committing the present offense less than two years after being released from prison, Spivey might still have a criminal history category of IV. See id., at § 5A (assigning category IV to defendants with a criminal history score a of 7, 8, or 9). It is thus at least arguable that the resulting sentence did not violate the Sixth Amendment as interpreted by Booker.

However, in addition to holding that sentencing enhancements under the Guidelines may violate the Sixth Amendment, the Supreme Court in Booker also held that the Guidelines are advisory. Booker, 125 S. Ct. at 757. As such, the District Court's mandatory application of the Guidelines to Spivey's sentence was in error, and we cannot say from the record before us whether that error "had a substantial and injurious effect or influence in determining the [sentence]." Kotteakos v. United States, 328 U.S. 750, 776 (1946). Therefore, having determined that the sentencing issues Spivey raises are best determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with Booker.

12